IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAUL C. ZAPATA,

        Plaintiff,

v.   No. CIV 06-1200 WJ/CEG

RONALD TORRES, Chief
of Corrections, and RIEL
WATSON, Chaplain,

        Defendants.

PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before me on Ronald Torres (Torres) and Rel Watson's (Watson) Martinez Report and Motion for Summary Judgment.[1] *See Doc. 32*. Plaintiff, Raul Zapata (Zapata), is proceeding pro se and has brought this civil rights action under 42 U.S.C. § 1983. In his Complaint, he asserts that Defendants have forced him to participate in a religious program that violates his religious beliefs. Because there are no material issues of fact in dispute and the Defendants are entitled to summary judgment as a matter of law, I recommend that this mater be dismissed with prejudice.

Background

Zapata, an inmate, filed his Complaint on December 12, 2006, asserting that the facility chaplain, Watson, and the Chief of Corrections, Torres, violated his right to freedom of religion under the First Amendment. *See Doc. 1*. Specifically, he alleges that he is Roman Catholic and

---

[1] All citations to the Martinez Report, which is docketed as Document 32, are to the bates stamped numbers; i.e. *Martinez Report* at 03. Defendant Watson was misidentified by Plaintiff in the Complaint as "Riel." *Doc. 32* at 1.

was "being forced to participate in the Christian fellowship and being locked in [his] room by chaplain Watson for not wanting to convert." *Id*. at 2.  He also alleges that Watson allowed individuals of the Muslim faith to be involved in the educational programs, but refused to allow him to pursue his faith.  *Id.* at 3.  As relief, Zapata seeks $500,000 for "violation of [his] civil right to freedom of religion." *Id*. at 6.  Pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621, Zapata did not declare under penalty of perjury that all the information contained in the Complaint was true and correct.  *Id*.

On September 27, 2007, I ordered Defendants to file a Martinez Report.  *See Doc. 28*.  On November 13, 2007, Defendants timely filed their Martinez Report, as well as a motion for summary judgment.  *See Doc. 32*.  In their motion for summary judgment, Defendants contend that: (i) Watson did not violate Zapata's free exercise rights, (ii) Torres is not a proper party to this lawsuit, and (iii) Defendants are entitled to qualified immunity.  *Id*.  Zapata failed to file a response to either the Martinez Report or the motion for summary judgment.

The events which give rise to this lawsuit occurred while Zapata was incarcerated in the F-7 pod at the Metropolitan Detention Center (MDC) in Albuquerque, New Mexico.  *Martinez Report* (*MR*) at 01-03.  The F-7 pod housed inmates participating in the Damascus Road Program, which is a voluntary faith-based educational program run by Watson.  *Id.*; *see also MR* at 12.  To be considered for the Damascus Road Program, inmates were required to complete an application and agree to abide by the program rules and policies.  *Id*.  Inmates also had to commit to actively participating in the program components.  *Id.; see also MR* at 06-12.  The education component of the program involved attending classes in English and mathematics.  *MR* at 06.  The faith-based component of the program consisted of meditation, reflection, and reading comprehension using concordances, dictionaries, and bibles.  *Id.* at 02.  The faith-based

component did not promote one particular religion and encouraged inmates to grow spiritually in their own religion.  *Id*. at 03.

Shortly after joining the Damascus Road Program, Zapata became threatening toward program participants and staff members.  *MR* at 03-04.  In an attempt to accommodate Zapata, Watson allowed Zapata to complete the educational and faith-based components of the program in his cell.  *Id*.  Zapata began hoarding materials in his cell and refused to share them with other program participants.  *Id*.  Upon learning that Zapata was refusing to share program materials with other inmates, Watson asked Zapata to return all program materials in his possession.  *Id*.  In response, Zapata threatened Watson verbally.  *Id*.; *see also MR* at 25.  As a result, Zapata was removed from the Damascus Road Program.  *Id.*

Zapata reapplied for the Damascus Road Program and was accepted.  *MR* at 04.  Shortly after readmission, he again began hoarding program materials and became argumentative with other participants and staff members.  *Id*.  Due to his behavior, Zapata was again removed from the program.  *Id*. at 05; *see also MR* at 13, 22.

Summary Judgment Standard

The Court may grant summary judgment, under Rule 56(c) of the Federal Rules of Civil Procedure, if the pleadings, depositions, answers to interrogatories and admissions or affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The opposing party must be given notice and an opportunity to respond, as provided in Rule 56.  *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

Defendants carry the initial burden of establishing that there is no genuine issue of material fact for trial.  They may satisfy the burden by showing an absence of evidence to support Zapata's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once they

meet their burden, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on a material matter. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The party opposing the motion may not rest on pleadings, mere argument, or contention but must set forth specific facts through admissible evidence, showing there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof. If he cannot make such a showing, summary judgment is appropriate. *See Celotex*, 477 U.S. at 324.

However, the nonmovant's burden to respond arises only where the summary judgment motion is properly "supported." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

> Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied, *even if no evidentiary matter is presented*.

*Id*. (emphasis in original) (internal citation omitted). Thus, the Court must decide whether Defendants have met their initial burden of demonstrating that no material issues of fact remain for trial. *Id*. Here, I find that they have, and that Zapata has not demonstrated that there is a genuine issue for trial on a material matter. Therefore, summary judgment should be granted.[2]

Analysis

Under the First Amendment, regulations or policies that infringe upon a prisoner's rights to religious freedom must pass a reasonableness standard, rather than the usual strict scrutiny standard. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

---

[2] Previously, the Court informed the parties that "the *Martinez* report may be used in a variety of contexts, including motion for summary judgment or sua sponte entry of summary judgment." *Doc. 29* at 2.

penological interests." *Id.* at 89. In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must show that a prison regulation "substantially burdened . . . sincerely-held religious beliefs." *See Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). Consequently, the first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Second, prison officials-defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles*, 486 F.3d at 1182. At that point, courts balance the factors set forth in *Turner* to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1181.[3]

Here, Zapata has failed to show a MDC policy or a Damascus Road Program policy that substantially burdens his religious beliefs. Thus, his claim fails at the first step of the inquiry. However, assuming that Zapata could satisfy the first step, his removal from the Damascus Road Program clearly furthered a legitimate penological interest. The undisputed facts show that Zapata was removed from the program for threatening staff members and program participants.

---

[3] As other courts have pointed out, the first *Turner* factor is actually more of an "element" than a factor in the sense that it "is not simply a consideration to be weighed but rather an essential requirement." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006). To satisfy the first *Turner* factor, "the prison administration is required to make a minimal showing that a rational relationship exists between its policy and stated goals." *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002).

Safety of inmates and staff members is undoubtedly a legitimate penological interest. Accordingly, I find no constitutional violation based on a free exercise claim.[4]

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1)   Defendants' Motion for Summary Judgment (*Doc. 32*) be granted; and

2)   this matter be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within**

---

[4] As such, I see no reason to address Defendants' qualified immunity claim or proper party claim. I also note that in construing Zapata's Complaint liberally, I cannot find that the Damascus Road Program violates the Establishment Clause. Government activity runs afoul of the Establishment Clause if: (i) it has no secular purpose, (ii) its primary effect is to advance or inhibit religion, or (iii) it fosters excessive government entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). However, in analyzing similar programs, courts have declined to apply *Lemon* and have looked to the voluntariness of the program. *See Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1074-75 (2d Cir. 1996); *Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996). The focus on coercion stems directly from the Supreme Court's decision in *Lee v. Weisman*, 505 U.S. 577 (1992). Writing for the majority in *Lee*, Justice Kennedy declined to apply *Lemon* to assess whether school prayer at high school graduation ceremonies violates the Establishment Clause. *Id.* at 587 (stating that "we do not accept the invitation of petitioners and amicus the United States to reconsider our decision in Lemon v. Kurtzman."). Instead, the Court focused on the minimum requirements of the Establishment Clause: "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Id.* at 587. Here, whether focusing on coercion or applying the *Lemon* test, I find no Establishment Clause violation. The undisputed facts show that participation in the Damascus Road Program is entirely voluntary, that inmates who do not participate in the program suffer no consequences, and that the program does not prefer one religion over the other. *See Kerr*, 95 F.3d at 479; *Nusbaum v. Terrangi*, 210 F.Supp 2d 784, 789 (E.D. Va. 2002).

In addition, I cannot find that Plaintiff has alleged a claim under the Religious Land Use and Institutionalized Persons Act. *See 42 U.S.C. § 2000cc-1*. Zapata has not alleged that he is unable to freely attend to his religious needs and is dependent on the government's permission and accommodation for exercise of his religion. *See Doc. 1*. Zapata also has no viable Equal Protection claim because he cannot demonstrate a "discriminatory purpose leading to disparate treatment." *Roberts v. Champion*, 255 F.Supp 2d 1272, 1290 (N.D. Okla. 2003) (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). Further, an Equal Protection claim fails because, here, any "difference in treatment was [] reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006).

**the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE